## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COACH, INC. and COACH SERVICES, INC.,

                Plaintiffs,

v.

DEQUINDRE PLAZA, L.L.C., MICHAEL SHOLEM SURNOW, SOON HWA KIM, ASABOR ALI, and MARJORIE ESTHER GLOGOWER

                Defendant(s).

: Civil Action No. 2:11-cv-14032-PDB-LJM

: Hon. Paul D. Borman
: Hon. Magistrate Judge Laurie J. Michelson

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## MICHAEL S. SURNOW AND DEQUINDRE INVESTMENTS, LLC'S ANSWERS TO COACH'S FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSION TO DEFENDANTS DEQUINDRE PLAZA, L.L.C. AND MICHAEL SURNOW

### CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. Proc. 33, 34 and 36, Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively, "Coach") propound the following Requests for Production, Requests for Admission, and Interrogatories on Defendants Dequindre Plaza, L.L.C., and Michael Surnow. Responses shall be provided to the offices of Coach's attorney at the address below within 30 days.

### INSTRUCTIONS

A.    These interrogatories and production requests are deemed to be continuing in nature and should you, your counsel, or anyone representing your interest, acquire any additional knowledge or information which affects the accuracy or completeness of any answer which relates to the matter, such knowledge and information must be transmitted to the Plaintiffs'

attorney by way of supplemental answers. Failure to supplement an answer within a reasonable time can subject a party to sanctions. Furthermore you are under a similar duty to correct any incorrect response when you later learn that it is incorrect.

B.     The information sought in these discovery requests includes all information available to you or subject to reasonable inquiry by you, including information in the possession of you, your agents, representatives, employees, insurers and attorneys. Regardless of the manner in which these interrogatories are addressed and regardless of their form, your answers are to include all information available to you, your attorneys and/or their representatives.

C.     If a discovery request has subparts, answer each subpart separately and in full, and do not limit the answer to the interrogatory as a whole. If an interrogatory or its subpart cannot be answered in full, answer to the extent possible and specify the reason for the inability to answer the remainder, stating whatever information and knowledge you have regarding the unanswered portion.

D.     Each discovery request shall be construed independently. No discovery request shall be construed by reference to any other for the purpose of limiting the response to such interrogatory.

E.     An evasive or incomplete answer is deemed to be a failure to answer.

F.     *Information claimed to be privileged or work product.* In the event Defendants object to providing any information requested in the discovery requests on the grounds that it is privileged or work product, provide the following:

(1)     state the nature of the privilege or doctrine you claim protects the information requested;

(2)     if the objection is in regard to *a communication that is not a document*:

(a)      identify, as defined in the Definitions section of this document, the communication; and

(b)      identify, as defined in the Definitions section of this document, each and every person to whom the substance of the communication has been disclosed.

G      *If you objected to any discovery request, or any portion thereof, on the grounds of annoyance, embarrassment, oppression, or undue burden or expense*, set forth all facts upon which you rely as the basis for your objection.

## DEFINITIONS

A.      "Document" is used in the broadest sense and refers to any form of communication or data storage however produced or reproduced, *whether or not it now exists*. "Document" shall mean, without limitation, any data or information recorded in any form whatever, including all written, printed, typed, photostatic, photographed, recorded, or otherwise reproduced communications, data compilations, or representations of every kind, whether comprised of letters, words, numbers, pictures, sounds, or symbols, whether prepared by manual, mechanical, electronic, magnetic, photographic, or other means, as well as audio, video or other recordings of communications, oral statements, conversations, or events.  Information stored electronically, in any form, is expressly included.

B.      "Identify" and "identifying" has the following meanings:

(1)      When used in reference to a *document*, it means to state:

(a)      its date and type (letter, memorandum or other form);

(b)      the name and address of its author(s) or preparer(s); and the name and address of his or her current employer(s);

(c)      the name and address of the person(s) to whom the document is addressed or was submitted; and the name and address of his or her current employer(s);

(d)      a brief description of the subject matter or topic of the document;

(e)      the number of pages, with each side on which any written material is present being considered a separate page;

(f)      the document=s present location and the name and address of its custodian(s); and the name and address of his or her current employer(s).

(2)      When used in reference to an *individual person*, it means to state:

(a)      the person=s full name;

(b)      the person=s last known residential address and residential telephone number, and

(c)      the person=s last known employer, business address and business telephone number.

(3)      When used in reference to *any entity other than an individual person,* it means to state:

(a)      the entity=s full name and nature (e.g. corporation);

(b)      the entity=s last known address and telephone number; and

(c)      the state in which the entity has its principal place of business.

(4)      When used in reference to a *communication that is not a document,* it means to state:

(a)      the date of the communication;

(b)      the place where the communication occurred;

(c)     the type of communication (e.g. telephone conversation or in-person meeting);

(d)     the content of the communication;

(e)     the name, residential and business addresses and telephone numbers of all of the parties to the communication; and

(f)     the name, residential and business addresses and telephone numbers of all others who participated in or witnessed the communication.

C.     "Handbag" or "Handbags" shall not mean grocery bags or other bags provided free to customers to carry their purchases.

D.     "Marked Products" means articles, accessories, or products of any type (including but not limited to handbags, wallets, eyewear, footwear, and watches) bearing the name "Coach" or any of the Marks at Issue.

E.     "Marks at Issue" means any and all marks (including trademarks, trade dresses or copyrights) described in the Complaint, or any marks confusingly similar thereto.

F.     "Plaintiffs" means the plaintiffs in this case, both individually and collectively, as well as their officers, directors, shareholders, predecessors or successors in interest, affiliates, subsidiaries, agents, employees, or any other person acting or purporting to act on their behalf.

G.     "You" means Dequindre Plaza, L.L.C., its officers, directors, members, shareholders, predecessors or successors in interest, affiliates, subsidiaries, agents, employees, or another other person acting or purporting to act on its behalf.

H.     "Soon Hwa Kim" means Defendant Soon Hwa Kim individually and any of her current or former employees, agents, attorneys, or anyone else acting on her behalf.  This term shall also include any entities owned and/or operated by Defendant Kim as well as their officers,

directors, shareholders, predecessors or successors in interest, affiliates, subsidiaries, agents, employees, or any other person acting or purporting to act on their behalf.

I.      "Asabor Ali" means Defendant Asabor Ali individually and any of his current or former employees, agents, attorneys, or anyone else acting on his behalf.  This term shall also include any entities owned and/or operated by Defendant Ali as well as their officers, directors, shareholders, predecessors or successors in interest, affiliates, subsidiaries, agents, employees, or any other person acting or purporting to act on their behalf.

J.      "Marjorie Glogower" means Defendant Marjorie Glogower individually and any of her current or former employees, agents, attorneys, or anyone else acting on her behalf.  This term shall also include any entities owned and/or operated by Defendant Glogower as well as their officers, directors, shareholders, predecessors or successors in interest, affiliates, subsidiaries, agents, employees, or any other person acting or purporting to act on their behalf.

H.      "County Line Flea Market" shall mean the market operated at 20900 Dequindre, Warren, Michigan 48091.

I.      "Vendor(s)" shall mean any individual(s) and/or entity or entities that have been authorized to sell products at County Line Flea Market.

## INTERROGATORIES

1.      State the date on which vendor(s) began selling Marked Products from County Line Flea Market.  If such date is not known, state the date on which you became aware of such sales.

**ANSWER: We did not learn that any vendor's were allegedly selling Marked Products until receipt of the November 17, 2010 letter from Coach, however, Coach did not identify which vendors were selling Marked Products and we were not made aware of actual possession of Marked Products until July 8, 2011.**

2.      State the date on which vendor(s) began selling counterfeit goods from County

Line Flea Market.  If such date is not known, state the date on which you became aware of such

sales.

**ANSWER: We do not know the date when vendors began selling counterfeit goods at the Flea Market. In 1997 Dequindre was informed that one of the gold dealers was allegedly selling Disney gold jewelry without a trademark. He was confronted and informed that if he did not immediately stop selling such items he would be evicted. The dealer stopped selling Disney jewelry and is area has since had a sign stating that he does not sell Disney jewelry.**

3.      Identify the number of (a) Marked Products and (b) counterfeit goods that vendors

at County Line Flea Market have sold or otherwise distributed on a monthly basis during the last

five years.

**ANSWER: Unknown.**

4.      Identify the vendors at County Line Flea Market who have sold or otherwise

distributed (a) Marked Products or (b) counterfeit goods during the last five years.

**ANSWER: Unknown, except for the three defendants, Kim, Ali and Glogower who Plaintiffs allege is selling such products, however, we have no personal knowledge that is the case.**

5.      Identify all your agents and/or employees who, during the last 36 months, have

had responsibility for any of the following tasks.  If any of these individuals no longer work for

you, please so state.

- Inspecting and/or keeping records related to products offered for sale at County Line Flea Market.

- Advertising for County Line Flea Market.

- Entering into leases with vendors and/or collecting rent or other monies from vendors.

- Receiving and/or responding to correspondence addressed to County Line Flea Market.

- Managing the daily operations of County Line Flea Market.

- Serving as security at County Line Flea Market.

- Communicating with vendors regarding the sale of counterfeit merchandise.

**ANSWER: None. Dequindre leases the entire Flea Market building to Westwood Partners II, LLC ("Westwood"), who in turn operates the Flea Market and leases stalls to vendors on a weekly basis. Dequindre does not perform any of the above functions. However, Terry Bingham on behalf of Westwood performs all of the above functions, except for security which is provided by the following persons:**

> **Warwick Grundy**
> **2648 Clements**
> **Detroit, MI 48238**
>
> **Denise Hill**
> **18134 Russell**
> **Detroit, MI 48203**
>
> **Malachi Jackson**
> **3644 Buckingham**
> **Detroit, MI 48224**

6.      At any time, have you possessed any Marked Products?  If so, describe such

products and state where such products may be found today.

**ANSWER: No.**

7.      Identify all legal actions which have been brought against you during the past five

years, whether civil, criminal or otherwise.

**ANSWER:    As to Dequindre, None that we can recall. There may have been a slip and fall lawsuit but we do not recall if a lawsuit occurred.**
            **As to Surnow, Royal Management Company, et. al. v. Orchard Pine Investments, LLC and Michael Surnow, Case No. 10-112697-CH, Sixth Circuit Court for the State of Michigan; and Marilyn Surnow v. Michael Surnow, et al. Case No. 2011-123896-NZ, Sixth Circuit Court for the State of Michigan.**

8.      Identify all businesses or business entities in which you have held any interest

during the previous five years.

**ANSWER:    As to Dequindre, None.**
            **As to Surnow, Objection. This information is privileged and confidential and it will not be disclosed without an acceptable protective order.**

9.      Identify each and every communication between you and any vendor(s) at County Line Flea Market regarding the purchase, sale or distribution of counterfeit goods.  Specifically, state who you spoke to, the method of the communication, the substance of the communication, and the date of the communication.

**ANSWER: We have never had direct communication with any vendor all communication is through Westwood and except for the attached documents marked as DEQ-0001-00014 these defendants are not able to identify specific communication. However, after receipt of Coach's letter of November 17, 2010, Mr. Bingham on behalf of Westwood delivered copies of the letter to every vendor that sold purses and told them to remove any and all illegal merchandise from the market or be subject to eviction. As stated above, in 1997 Dequindre was informed that one of the gold dealers was allegedly selling Disney gold jewelry without a trademark. He was confronted and informed that if he did not immediately stop selling such items he would be evicted. The dealer stopped selling Disney jewelry and is area has since had a sign stating that he does not sell Disney jewelry. In 2006, Westwood learned that a dealer was making and selling counterfeit CD's and he was confronted by Mr. Bingham and evicted from the Flea Market. In 2008, it was discovered that a vender was selling counterfeit Nike shoes, he was confronted and agreed to remove the illegal merchandise from the Flea Market.**

10.      Identify each and every time you received written correspondence or documents related to sale or distribution of counterfeit goods at County Line Flea Market.

**ANSWER: To the best of our recollection we received two correspondences, one on August 19, 2011 from Chanel, Inc. and the other on November 17, 2010 from Coach.**

11.      Identify each and every communication between you and any manufacturer(s) or designer(s) regarding the purchase, sale or distribution of counterfeit goods.  Specifically, state who you spoke to, the method of the communication, the substance of the communication, and the date of the communication.

**ANSWER: No oral communication.**

12.      Identify each and every communication between you and any customer(s) of County Line Flea Market regarding the purchase, sale or distribution of counterfeit products.

Specifically, state who you communicated with and the method, substance, and date of the communication.

**ANSWER: None.**

13.    Identify all persons who furnished information or documents for the purpose of responding to these discovery requests.

**ANSWER:**      **Terry Bingham**
                **15462 Haverhill**
                **Macomb Township, Michigan 48044**
                **586-615-6882**

                **Michael Surnow**
                **320 Martin Street, Suite 100**
                **Birmingham, Michigan 48009**
                **248-865-3000**

14.    Identify all email addresses used or owned by you.

**ANSWER:      Dequindre, None.**

                **Michael Surnow, Michael@surnow.com and msurnow@sbcglobal.net**

15.    Has there been any transfer of ownership interest in Dequindre Plaza, L.L.C. during the past five years?  If so, identify all parties to the transaction(s) and describe the interest transferred.

**ANSWER: No.**

16.    Identify all communications that you have had with any party, other than your attorneys, regarding the allegations of the Complaint.

**ANSWER: None.**

17.    Identify all members, officers, and/or directors of Dequindre Plaza, L.L.C. over the previous five years.

**ANSWER: The members of Dequindre are Jeffrey C. Surnow, Trustee Under Revocable Trust Agreement Dated 4/17/91 and Michael S. Surnow, Trustee Under Revocable Trust Agreement Dated 6/11/91, as amended, both addresses are 320 Martin, Suite 100, Birmingham, Michigan 48009, Telephone No. 248-865-3000.**

18.    Do you have any reason to believe that the merchandise referenced in the Complaint was licensed, manufactured or designed by Coach? If so, describe the basis for this belief and identify all evidence, including testimony and documents, on which this belief is based.

**ANSWER: We do not know one way or the other.**

## REQUESTS FOR PRODUCTION

1.    All documents or things that were used or otherwise relied upon in the preparation of your responses to Plaintiffs' Interrogatories or Requests for Admission.

**ANSWER: See the attached documents marked DEQ-0001-00014.**

2.    All documents or things evidencing the possession, purchase, distribution or resale of Marked Products from any vendors at County Line Flea Market.

**ANSWER: None.**

3.    All leases and/or other agreements entered into between Dequindre Plaza, L.L.C., and/or Michael Surnow and Soon Hwa Kim.

**ANSWER: None.**

4.    All leases and/or other agreements entered into between Dequindre Plaza, L.L.C., and/or Michal Surnow and Marjorie Glogower.

**ANSWER: None.**

5.    All leases and/or other agreements entered into between Dequindre Plaza, L.L.C., and/or Michal Surnow and Asabor Ali.

**ANSWER: None.**

6.     All documents which reflect the profits and revenues you received from the sale or distribution of the Marked Products during the last 36 months.

**ANSWER: None.**

7.     All documents identifying the persons or entities from which vendors of County Line Flea Market purchased the Marked Products during the last 36 months.

**ANSWER: None.**

8.     All documents or things evidencing communications with vendors related to the purchase, sale or distribution of counterfeit products.

**ANSWER: See the attached documents, DEQ-0001-0009 and DEQ-00013-00014. These documents include signs on the building premises and communications that were made between Westwood and vendors that are in written form.**

9.     All documents or things evidencing communications with customers related to the purchase, sale or distribution of counterfeit products.

**ANSWER: None.**

10.     All documents or things evidencing communications between you and any other defendant in this case.

**ANSWER: None.**

11.     All documents pertaining to other legal proceedings in which you were involved concerning trademark infringement, copyright infringement and/or counterfeiting.

**ANSWER: None.**

12.     All documents regarding any accusations of trademark and/or copyright infringement, including, but not limited to the receipt of cease and desist letters, directed toward you, regardless of the date on which such documents were authored or transmitted.

**ANSWER: See DEQ-00010-11 and DEQ-00013-14 from Chanel and Coach.**

13.     Your tax returns filed for the previous three years and any amendments or supplements thereto.

**ANSWER: Objection. This information is confidential and privileged and it will not be provided without an appropriate protective order.**

14.     Documents sufficient to identify all bank accounts, investment accounts, savings accounts, or any other account into which profits from the sale of Marked Products may be placed.

**ANSWER: None.**

15.     Documents related to any transfer of ownership interest in Dequindre Plaza, L.L.C. during the past five years.

**ANSWER: None.**

## REQUESTS FOR ADMISSION

1.     Admit that Michael Surnow is the sole member of Dequindre Plaza, L.L.C.

**ANSWER: Deny. There are two members of Dequindre, Jeffrey C. Surnow, Trustee Under Revocable Trust Agreement Dated 4/17/91 and Michael S. Surnow, Trustee Under Revocable Trust Agreement Dated 6/11/91, as amended.**

2.     Admit that one or more vendor(s) at the County Line Flea Market sold Marked Products.

**ANSWER: This request is neither admitted nor denied because these defendants do not have any knowledge or information regarding the same. These defendants have no access to any information regarding these claims other than the allegations made by Plaintiffs; and, the information cannot be readily obtained from the other defendants because these defendants do not communicate with defendants Kim, Ali or Glogower, who have interests adverse to those of these defendants.**

3.     Admit that one or more vendor(s) at the County Line Flea Market offered for sale Marked Products.

**ANSWER: This request is neither admitted nor denied because these defendants do not have any knowledge or information regarding the same. These defendants have no access to any information regarding these claims other than the allegations made by Plaintiffs;**

and, the information cannot be readily obtained from the other defendants because these defendants do not communicate with defendants Kim, Ali or Glogower, who have interests adverse to those of these defendants.

    4.    Admit that one or more vendor(s) at the County Line Flea Market offered for sale

Marked Products before you received Coach's November 17, 2010 correspondence.

**ANSWER: This request is neither admitted nor denied because these defendants do not have any knowledge or information regarding the same. These defendants have no access to any information regarding these claims other than the allegations made by Plaintiffs; and, the information cannot be readily obtained from the other defendants because these defendants do not communicate with defendants Kim, Ali or Glogower, who have interests adverse to those of these defendants.**

    5.    Admit that one or more vendor(s) at the County Line Flea Market offered for sale

Marked Products between the time you received Coach's November 17, 2010 correspondence

and July 8, 2011.

**ANSWER: This request is neither admitted nor denied because these defendants do not have any knowledge or information regarding the same. These defendants have no access to any information regarding these claims other than the allegations made by Plaintiffs; and, the information cannot be readily obtained from the other defendants because these defendants do not communicate with defendants Kim, Ali or Glogower, who have interests adverse to those of these defendants.**

    6.    Admit that one or more vendor(s) at the County Line Flea Market offered for sale

Marked Products between July 8, 2011 and September 15, 2011.

**ANSWER: This request is neither admitted nor denied because these defendants do not have any knowledge or information regarding the same. These defendants have no access to any information regarding these claims other than the allegations made by Plaintiffs; and, the information cannot be readily obtained from the other defendants because these defendants do not communicate with defendants Kim, Ali or Glogower, who have interests adverse to those of these defendants.**

    7.    Admit that one or more vendor(s) at the County Line Flea Market offered for sale

Marked Products after September 15, 2011.

**ANSWER: This request is neither admitted nor denied because these defendants do not have any knowledge or information regarding the same. These defendants have no access to any information regarding these claims other than the allegations made by Plaintiffs; and, the information cannot be readily obtained from the other defendants because these defendants do not communicate with defendants Kim, Ali or Glogower, who have interests adverse to those of these defendants.**

8.      Admit that you knew that one or more vendor(s) at County Line Flea Market offered for sale Marked Products prior to your receipt of Coach's November 17, 2010 correspondence.

**ANSWER: Denied.**

9.      Admit that you knew that one or more vendor(s) at County Line Flea Market was offering for sale Marked Products between the time you received Coach's November 17, 2010 correspondence and July 8, 2011.

**ANSWER: Denied.**

10.      Admit that you knew that one or more vendor(s) at the County Line Flea Market was offering for sale Marked Products between July 8, 2011 and September 15, 2011.

**ANSWER: Denied.**

11.      Admit that you knew that one or more vendor(s) at the County Line Flea Market offered for sale Marked Products after September 15, 2011.

**ANSWER: Denied.**

12.      Admit that you received a letter dated November 17, 2010 from Coach stating in part, "This letter gives you formal notice that the illegal trafficking of counterfeit merchandise bearing one or more of the federally registered trademarks of Coach has been taking place at, 20900 Dequindre, Warren, MI 48089, a flea market which you own, by tenants who present lease and use the premises."

**ANSWER: Admitted.**

13.     Admit that after receiving the November 17, 2010 letter from Coach, County Line

Flea Market took no measures to prevent vendors from offering for sale Marked Products prior

to September 15, 2011.

**ANSWER:  Denied. When the letter from Coach was received, copies were made and the
same were given by Westwood to every vendor that sold purses and they were informed
that if they had any illegal merchandise that they were to remove it from the Flea Market.**

14.     Admit that after receiving the November 17, 2010 letter from Coach, one or more

vendor(s) at County Line Flea Market offered for sale Marked Products.

**ANSWER: This request is neither admitted nor denied because these defendants do not
have any knowledge or information regarding the same. These defendants have no access
to any information regarding these claims other than the allegations made by Plaintiffs;
and, the information cannot be readily obtained from the other defendants because these
defendants do not communicate with defendants Kim, Ali or Glogower, who have interests
adverse to those of these defendants.**

15.     Admit that after receiving the November 17, 2010 letter from Coach, you did not

investigate the authenticity of the Marked Products that vendors at County Line Flea Market

offered for sale prior to July 8, 2011.

**ANSWER: Denied. When the letter from Coach was received, copies were made and the
same was given to every vendor that sold purses and they were informed to remove any
and all illegal merchandise from the market.**

16.     Admit that on July 8, 2011, County Line Flea Market was raided by the Warren

Police Department.

**ANSWER: Admitted.**

17.     Admit that the July 8, 2011 raid of the County Line Flea Market by the Warren

Police Department resulted in the seizure of merchandise.

**ANSWER: Admitted.**

18.    Admit that of the products seized during July 8, 2011 raid of the County Line Flea

Market by the Warren Police Department, a number bore one or more of the Marks at Issue.

**ANSWER: This request is neither admitted nor denied because these defendants do not have any knowledge or information regarding the same. These defendants have no access to any information regarding these claims other than the allegations made by Plaintiffs; and, the information cannot be readily obtained from the other defendants because these defendants do not communicate with defendants Kim, Ali or Glogower, who have interests adverse to those of these defendants.**

19.    Admit that prior to the July 8, 2011 raid of the County Line Flea Market by the

Warren Police Department, you had no measures in place to prevent vendors from offering for

sale counterfeit items.

**ANSWER: Denied. Dequindre's tenant, Westwood, repeatedly informed vendors both oral and in written form that they are forbidden to offer for sale counterfeit items as evidenced by documents DEQ-0001-0009; and after receipt of Coach's letter of November 17, 2010, Mr. Bingham on behalf of Westwood delivered copies of the letter to every vendor that sold purses and told them to remove any and all illegal merchandise from the market or be subject to eviction.**

20.    Admit that Soon Hwa Kim was authorized to sell products at County Line Flea

Market prior to September 15, 2011.

**ANSWER: Admitted.**

21.    Admit that Dequindre Plaza, L.L.C. has collected rents from Soon Hwa Kim.

**ANSWER: Denied. Westwood collected rents from Kim.**

22.    Admit that Soon Hwa Kim offered to sell Marked Products from her stall at

County Line Flea Market.

**ANSWER: This request is neither admitted nor denied because these defendants do not have any knowledge or information regarding the same. These defendants have no access**

to any information regarding these claims other than the allegations made by Plaintiffs; and, the information cannot be readily obtained from the other defendants because these defendants do not communicate with defendants Kim, Ali or Glogower, who have interests adverse to those of these defendants.

23.     Admit that as a result of the July 8, 2011 raid of the County Line Flea Market by

the Warren Police Department, a number of Marked Products were seized from Defendant Kim's

stall.

**ANSWER: This request is neither admitted nor denied because these defendants do not have any knowledge or information regarding the same. These defendants have no access to any information regarding these claims other than the allegations made by Plaintiffs; and, the information cannot be readily obtained from the other defendants because these defendants do not communicate with defendants Kim, Ali or Glogower, who have interests adverse to those of these defendants.**

24.     Admit that Asabor Ali was authorized to sell products at County Line Flea Market

prior to September 15, 2011.

**ANSWER: Admitted.**

25.     Admit that Dequindre Plaza, L.L.C. has collected rents from Asabor Ali.

**ANSWER: Denied. Westwood collected rents from Ali.**

26.     Admit that Asabor Ali offered to sell Marked Products from a stall at County Line

Flea Market.

**ANSWER: This request is neither admitted nor denied because these defendants do not have any knowledge or information regarding the same. These defendants have no access to any information regarding these claims other than the allegations made by Plaintiffs; and, the information cannot be readily obtained from the other defendants because these defendants do not communicate with defendants Kim, Ali or Glogower, who have interests adverse to those of these defendants.**

27.     Admit that as a result of the July 8, 2011 raid of the County Line Flea Market by

the Warren Police Department, a number of Marked Products were seized from Defendant Ali's

stall.

**ANSWER: This request is neither admitted nor denied because these defendants do not have any knowledge or information regarding the same. These defendants have no access to any information regarding these claims other than the allegations made by Plaintiffs; and, the information cannot be readily obtained from the other defendants because these defendants do not communicate with defendants Kim, Ali or Glogower, who have interests adverse to those of these defendants.**

28.    Admit that Marjorie Glogower was authorized to sell products at County Line Flea Market prior to September 15, 2011.

**ANSWER: Admitted.**

29.    Admit that you have collected rents from Marjorie Glogower.

**ANSWER: Denied. Westwood collected rents from Glogower.**

30.    Admit that Marjorie Glogower offered to sell Marked Products from a stall at County Line Flea Market.

**ANSWER: This request is neither admitted nor denied because these defendants do not have any knowledge or information regarding the same. These defendants have no access to any information regarding these claims other than the allegations made by Plaintiffs; and, the information cannot be readily obtained from the other defendants because these defendants do not communicate with defendants Kim, Ali or Glogower, who have interests adverse to those of these defendants.**

31.    Admit that as a result of the July 8, 2011 raid of the County Line Flea Market by the Warren Police Department, a number of Marked Products were seized from Defendant Glogower's stall.

**ANSWER: This request is neither admitted nor denied because these defendants do not have any knowledge or information regarding the same. These defendants have no access to any information regarding these claims other than the allegations made by Plaintiffs; and, the information cannot be readily obtained from the other defendants because these defendants do not communicate with defendants Kim, Ali or Glogower, who have interests adverse to those of these defendants.**

32.    Admit that you have collected rents from vendors who sold Marked Products.

**ANSWER: Deny. Westwood collected rents.**

33.     Admit that you did not investigate the authenticity of the products that vendors at

County Line Flea Market offered for sale prior to July 8, 2011.

**ANSWER: Denied. We do not have the knowledge or expertise to distinguish a genuine Marked Product from a counterfeit. However, when we have been informed that vendors or selling counterfeit products we have taken appropriate steps to stop any further occurrences.**

34.     Admit that you did not investigate the authenticity of the products that vendors at

County Line Flea Market offered for sale after July 8, 2011.

**ANSWER: Denied. We do not have the knowledge or expertise to distinguish a genuine Marked Product from a counterfeit. However, when we have been informed that vendors or selling counterfeit products we have taken appropriate steps to stop any further occurrences.**

35.     Admit that you received monies for the sale of Marked Products that displayed

one or more of the Marks at Issue.

**ANSWER: Denied.**

36.     Admit that you have communicated with the manufacturer(s) of the Marked

Products sold by vendors at County Line Flea Market about the allegations of the Complaint.

**ANSWER: Denied.**

37.     Admit that you have communicated with the distributors(s) of the Marked

Products sold by vendors at County Line Flea Market about the allegations of the Complaint.

**ANSWER: Denied.**

38.     Admit that you have never been licensed to sell or display for sale any Marked

Products.

**ANSWER: Admitted.**

39.    Admit that Coach has not manufactured any products that vendors at County Line

Flea Market have offered for sale.  If you deny this Request for Admission, state the basis for

your belief that the products were manufactured by Coach.

**ANSWER:    This request is neither admitted nor denied because these defendants do not
have any knowledge or information regarding the same. These defendants have no access
to any information regarding these claims other than the allegations made by Plaintiffs;
and, the information cannot be readily obtained from the other defendants because these
defendants do not communicate with defendants Kim, Ali or Glogower, who have interests
adverse to those of these defendants.**

40.    Admit that you have not communicated with customers regarding the sale of

alleged counterfeit products from County Line Flea Market.

**ANSWER: Admitted.**

41.    Admit that you have offered no refunds to customers for the sale of alleged

counterfeit products from County Line Flea Market.

**ANSWER: Admitted.**

**I DECLARE THAT THE STATEMENTS ABOVE ARE TRUE TO THE BEST OF MY
INFORMATION, KNOWLEDGE, AND BELIEF.**

Michael Surnow, individually on behalf of
Dequindre Investments, LLC

On this 28 day of February, 2012, before me, a Notary Public, personally appeared Michael Surnow to me known
to be the person described in who executed this document and acknowledge the same to be his free act and Deed.

Notary Public _____, County _____
Acting in Oakland County
My Commission Expires _____

> SAMUEL E. HARTMAN
> Notary Public, State of Michigan
> County of Oakland
> My Commission Expires Mar. 29, 2017
> Acting in the County of  OAKLAND

Respectfully submitted,

_____

Jay N. Siefman
Attorney for Dequindre and Surnow
320 Martin Street, Suite 120
Birmingham, Michigan 48009
248-851-2288
jay@siefman.com

### Certificate of Service

The undersigned certifies that on February 29, 2012 a copy of the foregoing pleading was served on the attorneys of record or the unrepresented parties, to the above cause, at their respective addresses as disclosed by the pleadings of record, by one or more of the means checked off below.

  [X] First Class Mail, Postage Prepaid
  [  ] Fax Transmission
  [  ] Hand Delivery
  [  ] Overnight Delivery

I declare under penalty of perjury that the statement above is true to the best of my knowledge, information and belief.

_____

Jay N. Siefman