## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |
|---|---|
| COACH, INC. and COACH SERVICES, INC., | : |
|  | : |
|  | : |
| Plaintiffs, | : Civil Action No. 2:11-cv-14032-PDB-LJM |
|  | : |
|  | : Hon. Paul D. Borman |
| v. | : Hon. Magistrate Judge Laurie J. Michelson |
|  | : |
| DEQUINDRE PLAZA, L.L.C., MICHAEL SHOLEM SURNOW, SOON HWA KIM, ASABOR ALI, and MARJORIE ESTHER GLOGOWER | : |
|  | : |
|  | : |
|  | : |
| Defendant(s). | : |
|  | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

### COACH'S FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSION TO DEFENDANTS DEQUINDRE PLAZA, L.L.C. AND MICHAEL SURNOW

Pursuant to Fed. R. Civ. Proc. 33, 34 and 36, Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively, "Coach") propound the following Requests for Production, Requests for Admission, and Interrogatories on Defendants Dequindre Plaza, L.L.C., and Michael Surnow. Responses shall be provided to the offices of Coach's attorney at the address below within 30 days.

### INSTRUCTIONS

A.     These interrogatories and production requests are deemed to be continuing in nature and should you, your counsel, or anyone representing your interest, acquire any additional knowledge or information which affects the accuracy or completeness of any answer which relates to the matter, such knowledge and information must be transmitted to the Plaintiffs' attorney by way of supplemental answers. Failure to supplement an answer within a reasonable

time can subject a party to sanctions. Furthermore you are under a similar duty to correct any incorrect response when you later learn that it is incorrect.

B.    The information sought in these discovery requests includes all information available to you or subject to reasonable inquiry by you, including information in the possession of you, your agents, representatives, employees, insurers and attorneys. Regardless of the manner in which these interrogatories are addressed and regardless of their form, your answers are to include all information available to you, your attorneys and/or their representatives.

C.    If a discovery request has subparts, answer each subpart separately and in full, and do not limit the answer to the interrogatory as a whole. If an interrogatory or its subpart cannot be answered in full, answer to the extent possible and specify the reason for the inability to answer the remainder, stating whatever information and knowledge you have regarding the unanswered portion.

D.    Each discovery request shall be construed independently. No discovery request shall be construed by reference to any other for the purpose of limiting the response to such interrogatory.

E.    An evasive or incomplete answer is deemed to be a failure to answer.

F.    *Information claimed to be privileged or work product.* In the event Defendants object to providing any information requested in the discovery requests on the grounds that it is privileged or work product, provide the following:

(1)    state the nature of the privilege or doctrine you claim protects the information requested;

(2)    if the objection is in regard to *a communication that is not a document*:

(a)     identify, as defined in the Definitions section of this document, the communication; and

(b)     identify, as defined in the Definitions section of this document, each and every person to whom the substance of the communication has been disclosed.

G      *If you objected to any discovery request, or any portion thereof, on the grounds of annoyance, embarrassment, oppression, or undue burden or expense,* set forth all facts upon which you rely as the basis for your objection.

## DEFINITIONS

A.     "Document" is used in the broadest sense and refers to any form of communication or data storage however produced or reproduced, *whether or not it now exists.* "Document" shall mean, without limitation, any data or information recorded in any form whatever, including all written, printed, typed, photostatic, photographed, recorded, or otherwise reproduced communications, data compilations, or representations of every kind, whether comprised of letters, words, numbers, pictures, sounds, or symbols, whether prepared by manual, mechanical, electronic, magnetic, photographic, or other means, as well as audio, video or other recordings of communications, oral statements, conversations, or events.  Information stored electronically, in any form, is expressly included.

B.     "Identify" and "identifying" has the following meanings:

(I)     When used in reference to a *document*, it means to state:

(a)     its date and type (letter, memorandum or other form);

(b)     the name and address of its author(s) or preparer(s); and the name and address of his or her current employer(s);

(c)     the name and address of the person(s) to whom the document is addressed or was submitted; and the name and address of his or her current employer(s);

(d)     a brief description of the subject matter or topic of the document;

(e)     the number of pages, with each side on which any written material is present being considered a separate page;

(f)     the document's present location and the name and address of its custodian(s); and the name and address of his or her current employer(s).

(2)     When used in reference to an *individual person*, it means to state:

(a)     the person's full name;

(b)     the person's last known residential address and residential telephone number, and

(c)     the person's last known employer, business address and business telephone number.

(3)     When used in reference to *any entity other than an individual person*, it means to state:

(a)     the entity's full name and nature (e.g. corporation);

(b)     the entity's last known address and telephone number; and

(c)     the state in which the entity has its principal place of business.

(4)     When used in reference to a *communication that is not a document*, it means to state:

(a)     the date of the communication;

(b)     the place where the communication occurred;

(c)     the type of communication (e.g. telephone conversation or in-person meeting);

(d)     the content of the communication;

(e)     the name, residential and business addresses and telephone numbers of all of the parties to the communication; and

(f)     the name, residential and business addresses and telephone numbers of all others who participated in or witnessed the communication.

C.     "Handbag" or "Handbags" shall not mean grocery bags or other bags provided free to customers to carry their purchases.

D.     "Marked Products" means articles, accessories, or products of any type (including but not limited to handbags, wallets, eyewear, footwear, and watches) bearing the name "Coach" or any of the Marks at Issue.

E.     "Marks at Issue" means any and all marks (including trademarks, trade dresses or copyrights) described in the Complaint, or any marks confusingly similar thereto.

F.     "Plaintiffs" means the plaintiffs in this case, both individually and collectively, as well as their officers, directors, shareholders, predecessors or successors in interest, affiliates, subsidiaries, agents, employees, or any other person acting or purporting to act on their behalf.

G.     "You" means Dequindre Plaza, L.L.C., its officers, directors, members, shareholders, predecessors or successors in interest, affiliates, subsidiaries, agents, employees, or another other person acting or purporting to act on its behalf.

H.     "Soon Hwa Kim" means Defendant Soon Hwa Kim individually and any of her current or former employees, agents, attorneys, or anyone else acting on her behalf.  This term shall also include any entities owned and/or operated by Defendant Kim as well as their officers,

directors, shareholders, predecessors or successors in interest, affiliates, subsidiaries, agents, employees, or any other person acting or purporting to act on their behalf.

I.      "Asabor Ali" means Defendant Asabor Ali individually and any of his current or former employees, agents, attorneys, or anyone else acting on his behalf.  This term shall also include any entities owned and/or operated by Defendant Ali as well as their officers, directors, shareholders, predecessors or successors in interest, affiliates, subsidiaries, agents, employees, or any other person acting or purporting to act on their behalf.

J.      "Marjorie Glogower" means Defendant Marjorie Glogower individually and any of her current or former employees, agents, attorneys, or anyone else acting on her behalf.  This term shall also include any entities owned and/or operated by Defendant Glogower as well as their officers, directors, shareholders, predecessors or successors in interest, affiliates, subsidiaries, agents, employees, or any other person acting or purporting to act on their behalf.

H.      "County Line Flea Market" shall mean the market operated at 20900 Dequindre, Warren, Michigan 48091.

I.      "Vendor(s)" shall mean any individual(s) and/or entity or entities that have been authorized to sell products at County Line Flea Market.

## INTERROGATORIES

1.      State the date on which vendor(s) began selling Marked Products from County Line Flea Market.  If such date is not known, state the date on which you became aware of such sales.

**ANSWER:**

2.      State the date on which vendor(s) began selling counterfeit goods from County Line Flea Market. If such date is not known, state the date on which you became aware of such sales.

**ANSWER:**


3.      Identify the number of (a) Marked Products and (b) counterfeit goods that vendors at County Line Flea Market have sold or otherwise distributed on a monthly basis during the last five years.

**ANSWER:**


4.      Identify the vendors at County Line Flea Market who have sold or otherwise distributed (a) Marked Products or (b) counterfeit goods during the last five years.

**ANSWER:**


5.      Identify all your agents and/or employees who, during the last 36 months, have had responsibility for any of the following tasks. If any of these individuals no longer work for you, please so state.

- Inspecting and/or keeping records related to products offered for sale at County Line Flea Market.

- Advertising for County Line Flea Market.

- Entering into leases with vendors and/or collecting rent or other monies from vendors.

- Receiving and/or responding to correspondence addressed to County Line Flea Market.

- Managing the daily operations of County Line Flea Market.

- Serving as security at County Line Flea Market.

- Communicating with vendors regarding the sale of counterfeit merchandise.

**ANSWER:**


6.      At any time, have you possessed any Marked Products?  If so, describe such products and state where such products may be found today.

**ANSWER:**


7.      Identify all legal actions which have been brought against you during the past five years, whether civil, criminal or otherwise.

**ANSWER:**


8.      Identify all businesses or business entities in which you have held any interest during the previous five years.

**ANSWER:**


9.      Identify each and every communication between you and any vendor(s) at County Line Flea Market regarding the purchase, sale or distribution of counterfeit goods.  Specifically, state who you spoke to, the method of the communication, the substance of the communication, and the date of the communication.

**ANSWER:**


10.      Identify each and every time you received written correspondence or documents related to sale or distribution of counterfeit goods at County Line Flea Market.

**ANSWER:**

11.    Identify each and every communication between you and any manufacturer(s) or designer(s) regarding the purchase, sale or distribution of counterfeit goods.  Specifically, state who you spoke to, the method of the communication, the substance of the communication, and the date of the communication.

**ANSWER:**

12.    Identify each and every communication between you and any customer(s) of County Line Flea Market regarding the purchase, sale or distribution of counterfeit products. Specifically, state who you communicated with and the method, substance, and date of the communication.

**ANSWER:**

13.    Identify all persons who furnished information or documents for the purpose of responding to these discovery requests.

**ANSWER:**

14.    Identify all email addresses used or owned by you.

**ANSWER:**

15.     Has there been any transfer of ownership interest in Dequindre Plaza, L.L.C. during the past five years?  If so, identify all parties to the transaction(s) and describe the interest transferred.

**ANSWER:**


16.     Identify all communications that you have had with any party, other than your attorneys, regarding the allegations of the Complaint.

**ANSWER:**


17.     Identify all members, officers, and/or directors of Dequindre Plaza, L.L.C. over the previous five years.

**ANSWER:**


18.     Do you have any reason to believe that the merchandise referenced in the Complaint was licensed, manufactured or designed by Coach?  If so, describe the basis for this belief and identify all evidence, including testimony and documents, on which this belief is based.

**ANSWER:**


## REQUESTS FOR PRODUCTION

1.     All documents or things that were used or otherwise relied upon in the preparation of your responses to Plaintiffs' Interrogatories or Requests for Admission.

**ANSWER:**


2.    All documents or things evidencing the possession, purchase, distribution or resale of Marked Products from any vendors at County Line Flea Market.

**ANSWER:**


3.    All leases and/or other agreements entered into between Dequindre Plaza, L.L.C., and/or Michael Surnow and Soon Hwa Kim.

**ANSWER:**


4.    All leases and/or other agreements entered into between Dequindre Plaza, L.L.C., and/or Michal Surnow and Marjorie Glogower.

**ANSWER:**


5.    All leases and/or other agreements entered into between Dequindre Plaza, L.L.C., and/or Michal Surnow and Asabor Ali.

**ANSWER:**


6.    All documents which reflect the profits and revenues you received from the sale or distribution of the Marked Products during the last 36 months.

**ANSWER:**

7.     All documents identifying the persons or entities from which vendors of County Line Flea Market purchased the Marked Products during the last 36 months.

**ANSWER:**


8.     All documents or things evidencing communications with vendors related to the purchase, sale or distribution of counterfeit products.

**ANSWER:**


9.     All documents or things evidencing communications with customers related to the purchase, sale or distribution of counterfeit products.

**ANSWER:**


10.     All documents or things evidencing communications between you and any other defendant in this case.

**ANSWER:**


11.     All documents pertaining to other legal proceedings in which you were involved concerning trademark infringement, copyright infringement and/or counterfeiting.

**ANSWER:**


12.     All documents regarding any accusations of trademark and/or copyright infringement, including, but not limited to the receipt of cease and desist letters, directed toward you, regardless of the date on which such documents were authored or transmitted.

**ANSWER:**


13.     Your tax returns filed for the previous three years and any amendments or supplements thereto.

**ANSWER:**


14.     Documents sufficient to identify all bank accounts, investment accounts, savings accounts, or any other account into which profits from the sale of Marked Products may be placed.

**ANSWER:**


15.     Documents related to any transfer of ownership interest in Dequindre Plaza, L.L.C. during the past five years.

**ANSWER:**

## REQUESTS FOR ADMISSION

1.     Admit that Michael Surnow is the sole member of Dequindre Plaza, L.L.C.

**ANSWER:**


2.     Admit that one or more vendor(s) at the County Line Flea Market sold Marked Products.

**ANSWER:**


3.     Admit that one or more vendor(s) at the County Line Flea Market offered for sale Marked Products.

**ANSWER:**

4.      Admit that one or more vendor(s) at the County Line Flea Market offered for sale Marked Products before you received Coach's November 17, 2010 correspondence.

**ANSWER:**

5.      Admit that one or more vendor(s) at the County Line Flea Market offered for sale Marked Products between the time you received Coach's November 17, 2010 correspondence and July 8, 2011.

**ANSWER:**

6.      Admit that one or more vendor(s) at the County Line Flea Market offered for sale Marked Products between July 8, 2011 and September 15, 2011.

**ANSWER:**

7.      Admit that one or more vendor(s) at the County Line Flea Market offered for sale Marked Products after September 15, 2011.

**ANSWER:**

8.      Admit that you knew that one or more vendor(s) at County Line Flea Market offered for sale Marked Products prior to your receipt of Coach's November 17, 2010 correspondence.

**ANSWER:**

9.      Admit that you knew that one or more vendor(s) at County Line Flea Market was offering for sale Marked Products between the time you received Coach's November 17, 2010 correspondence and July 8, 2011.

**ANSWER:**


10.     Admit that you knew that one or more vendor(s) at the County Line Flea Market was offering for sale Marked Products between July 8, 2011 and September 15, 2011.

**ANSWER:**


11.     Admit that you knew that one or more vendor(s) at the County Line Flea Market offered for sale Marked Products after September 15, 2011.

**ANSWER:**


12.     Admit that you received a letter dated November 17, 2010 from Coach stating in part, "This letter gives you formal notice that the illegal trafficking of counterfeit merchandise bearing one or more of the federally registered trademarks of Coach has been taking place at, 20900 Dequindre, Warren, MI 48089, a flea market which you own, by tenants who present lease and use the premises."

**ANSWER:**

13.      Admit that after receiving the November 17, 2010 letter from Coach, County Line Flea Market took no measures to prevent vendors from offering for sale Marked Products prior to September 15, 2011.

**ANSWER:**

14.      Admit that after receiving the November 17, 2010 letter from Coach, one or more vendor(s) at County Line Flea Market offered for sale Marked Products.

**ANSWER:**

15.      Admit that after receiving the November 17, 2010 letter from Coach, you did not investigate the authenticity of the Marked Products that vendors at County Line Flea Market offered for sale prior to July 8, 2011.

**ANSWER:**

16.      Admit that on July 8, 2011, County Line Flea Market was raided by the Warren Police Department.

**ANSWER:**

17.      Admit that the July 8, 2011 raid of the County Line Flea Market by the Warren Police Department resulted in the seizure of merchandise.

**ANSWER:**

18.     Admit that of the products seized during July 8, 2011 raid of the County Line Flea Market by the Warren Police Department, a number bore one or more of the Marks at Issue.

**ANSWER:**


19.     Admit that prior to the July 8, 2011 raid of the County Line Flea Market by the Warren Police Department, you had no measures in place to prevent vendors from offering for sale counterfeit items.

**ANSWER:**


20.     Admit that Soon Hwa Kim was authorized to sell products at County Line Flea Market prior to September 15, 2011.

**ANSWER:**


21.     Admit that Dequindre Plaza, L.L.C. has collected rents from Soon Hwa Kim.

**ANSWER:**


22.     Admit that Soon Hwa Kim offered to sell Marked Products from her stall at County Line Flea Market.

**ANSWER:**


23.     Admit that as a result of the July 8, 2011 raid of the County Line Flea Market by the Warren Police Department, a number of Marked Products were seized from Defendant Kim's stall.

**ANSWER:**


24.     Admit that Asabor Ali was authorized to sell products at County Line Flea Market

prior to September 15, 2011.

**ANSWER:**


25.     Admit that Dequindre Plaza, L.L.C. has collected rents from Asabor Ali.

**ANSWER:**


26.     Admit that Asabor Ali offered to sell Marked Products from a stall at County Line

Flea Market.

**ANSWER:**


27.     Admit that as a result of the July 8, 2011 raid of the County Line Flea Market by

the Warren Police Department, a number of Marked Products were seized from Defendant Ali's

stall.

**ANSWER:**


28.     Admit that Marjorie Glogower was authorized to sell products at County Line

Flea Market prior to September 15, 2011.

**ANSWER:**


29.     Admit that you have collected rents from Marjorie Glogower.

**ANSWER:**

30.     Admit that Marjorie Glogower offered to sell Marked Products from a stall at County Line Flea Market.

**ANSWER:**

31.     Admit that as a result of the July 8, 2011 raid of the County Line Flea Market by the Warren Police Department, a number of Marked Products were seized from Defendant Glogower's stall.

**ANSWER:**

32.     Admit that you have collected rents from vendors who sold Marked Products.

**ANSWER:**

33.     Admit that you did not investigate the authenticity of the products that vendors at County Line Flea Market offered for sale prior to July 8, 2011.

**ANSWER:**

34.     Admit that you did not investigate the authenticity of the products that vendors at County Line Flea Market offered for sale after July 8, 2011.

**ANSWER:**

35.     Admit that you received monies for the sale of Marked Products that displayed one or more of the Marks at Issue.

**ANSWER:**


36.     Admit that you have communicated with the manufacturer(s) of the Marked Products sold by vendors at County Line Flea Market about the allegations of the Complaint.

**ANSWER:**


37.     Admit that you have communicated with the distributors(s) of the Marked Products sold by vendors at County Line Flea Market about the allegations of the Complaint.

**ANSWER:**


38.     Admit that you have never been licensed to sell or display for sale any Marked Products.

**ANSWER:**


39.     Admit that Coach has not manufactured any products that vendors at County Line Flea Market have offered for sale.  If you deny this Request for Admission, state the basis for your belief that the products were manufactured by Coach.

**ANSWER:**


40.     Admit that you have not communicated with customers regarding the sale of alleged counterfeit products from County Line Flea Market.

**ANSWER:**


41.    Admit that you have offered no refunds to customers for the sale of alleged counterfeit products from County Line Flea Market.

**ANSWER:**

Dated:  February 3, 2012

Joe Sadler (P71829)
Katherine Brooks (P74511)
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, MI  49503
(616) 752-2271
jsadler@wnj.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Laurie B. Geralds states that on February 3, 2012 she caused copies of Coach's First Interrogatories, Requests for Production and Requests for Admission to Defendants Dequindre Plaza, L.L.C. and Michael Surnow to be deposited in the U.S. Mail with postage fully prepaid upon:

| | | |
|---|---|---|
| Richard T. Taylor | Ralph C. Simpson | Robert R. Stearns |
| PO Box 430696 | Gary D. Janadia | Shawn J. Coppins |
| Pontiac, MI  48343 | Law Offices of Janadia and Janadia | Stearns & Coppins PLLC |
| | 1300 E. Lafayette, Suite 1804 | 12434 E. Twelve Mile Rd. Suite 102 |
| | Detroit, MI  48207 | Warren, MI  48093 |

Jay N. Siefman
Jay N. Siefman, PLC
320 Martin St., Ste. 120
Birmingham, MI  48009

*Laurie B. Geralds*
Laurie B. Geralds

6934624