UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COACH, INC. and COACH SERVICES,
INC.,

                    Plaintiffs,                         Case No. 11-cv-14032

                                                        Paul D. Borman
                                                        United States District Judge

v.

                                                        Laurie J. Michelson
                                                        United States Magistrate Judge

DEQUINDRE PLAZA, L.L.C., MICHAEL
SHOLEM SURNOW, SOON HWA KIM,
ASABOR ALI, MARJORIE ESTHER
GLOGOWER, JEFFREY C. SURNOW,
TERRY BINGHAM, and WESTWOOD
PARTNERS II, L.L.C.,

                    Defendants.
_____/

## OPINION AND ORDER AFFIRMING THE MAGISTRATE JUDGE'S OCTOBER 11, 2012 ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR AN ORDER COMPELLING DISCOVERY AND RELATED RELIEF (ECF NO. 72)

This matter is before the Court on Defendants' Dequindre Plaza LLC, Jeffrey Surnow,

Michael Surnow, Terry Bingham and Westwood Partners II, LLC (the "Dequindre Defendants")

Objections (ECF No. 73) to Magistrate Judge Laurie Michelson's October 11, 2012 Order Granting

in Part and Denying in Part Motion for an Order Compelling Discovery and Related Relief (ECF No.

72, 10/11/12 Order).[1] Plaintiffs filed a Response to the Dequindre Defendants' objections (ECF No.

_____

[1] Magistrate Judge Michelson originally entered an Order granting in part and denying in part the motion to compel for the reasons stated on the record, directing the parties "to submit a subsequent proposed order detailing the specifics of the ruling." (ECF No. 65, September 25, 2012 Order.) The

1

77) and the Dequindre Defendants filed a reply (ECF No. 78). For the reasons that follow, the Court AFFIRMS the Magistrate Judge's October 11, 2012 Order.

## I.   BACKGROUND

As pertinent to the instant objections, this action involves Coach's claims that the Dequindre Defendants engaged in contributory or indirect counterfeiting of Coach goods and infringement of Coach trademarks and trade dress in violation of the Lanham Act. The Dequindre Defendants manage and own the County Line Flea Market in Warren, Michigan, at which certain tenants/vendors (some of whom are additional Individual Defendants in this action) sold the counterfeit and infringing Coach goods. It is undisputed that the Dequindre Defendants became aware that certain County Line Flea Market tenants were selling counterfeit goods, including specifically Coach counterfeit goods, and that certain vendors had been raided for selling counterfeit Coach goods. (ECF No. 61-3, Defs.' Reply to Mot. to Compel, Ex. E, Defs.' Answers to Interrogatories; ECF No. 60-2, Pls.' Resp. to Defs.' Mot. to Compel, Ex. A, July 24, 2012 Deposition of Terry Bingham, 40-49, 66.) The Dequindre Defendants assert that they had a policy in place that sought to deter the sale of counterfeit goods at the Flea Market and further assert that they took corrective action when they did become aware of counterfeiting activities. (ECF No. 61, Defs.' Reply 10, Exs. D and E). However, Terry Bingham, the individual in charge of terminating a vendor's right to do business at the Flea Market, admitted that the Flea Market has never had procedures in place to detect the sale

Dequindre Defendants subsequently submitted an order (ECF No. 66) to which Plaintiffs objected (ECF No. 68). The Dequindre Defendants also filed objections to Magistrate Judge Michelson's September 25, 2012 Order. (ECF No. 69.) The Dequindre Defendants subsequently filed a Notice of Settlement of Order (ECF No. 70), which also is resolved by the Magistrate Judge's October 11, 2012 Order that is the subject of the instant objections. The Dequindre Defendants' instant objections to the Magistrate Judge's clarifying Order are nearly identical to, and supersede, their earlier-filed objections, which are similarly denied by this Order.

of counterfeit goods by vendors and conceded that he had never personally inspected a vendor's goods to determine whether they were counterfeit nor instructed others on detecting counterfeit goods. (Bingham Dep. 42, 45, 77.)

The Dequindre Defendants filed a motion to compel production of training materials that Coach utilizes to train investigators on the detection of counterfeit Coach products and further sought discovery regarding Coach's internal pricing strategies and policies. Following a hearing held on September 24, 2012 on these and other issues, Magistrate Judge Michelson denied the motion to compel production of the training materials and precluded inquiry into Coach's internal pricing strategies. The Dequindre Defendants object, arguing that both the training materials and the internal pricing policies are relevant and discoverable.

## II.   STANDARD OF REVIEW

28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a) both provide that a district judge must modify or set aside any portion of a magistrate judge's non-dispositive pretrial order found to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The United States Supreme Court and the Sixth Circuit Court of Appeals have stated that "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (explaining the clearly erroneous standard under Rule 52(a)); *Hagaman v. Comm'r of Internal Revenue*, 958 F.2d 684, 690 (6th Cir. 1992) (quoting *U.S. Gypsum Co.*). *See also United States v. Mandycz*, 200 F.R.D. 353, 356 (E.D. Mich. 2001) (explaining the standard under Rule 72(a)).

This standard does not empower a reviewing court to reverse the Magistrate Judge's finding

because it would have decided the matter differently. *Anderson v. City of Bessemer City, N.C.*, 470

U.S. 564, 573 (1985) (interpreting the clearly erroneous standard in Rule 52(a)). The Sixth Circuit

has noted that: "[t]he question is not whether the finding is the best or only conclusion that can be

drawn from the evidence, or whether it is the one which the reviewing court would draw. Rather,

the test is whether there is evidence in the record to support the lower court's finding, and whether

its construction of that evidence is a reasonable one." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*,

774 F.2d 135, 140 (6th Cir. 1985).

"The 'clearly erroneous' standard applies only to the magistrate judge's factual findings; his

legal conclusions are reviewed under the plenary 'contrary to law' standard. . . . Therefore, [the

reviewing court] must exercise independent judgment with respect to the magistrate judge's

conclusions of law." *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich.1995)

(citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992)).

## III.   ANALYSIS

It is undisputed that the vendor Defendants in this case were selling counterfeit Coach goods.

Coach seeks to hold the Dequindre Defendants, the owners and operators of the Flea Market where

the vendors sold the counterfeit goods, liable on a theory of contributory trademark infringement.

In *Coach, Inc. v. Gata Corp.*, No. 10-cv-141, 2011 WL 2358671 (D.N.H. June 9, 2011), the court

summarized the contributory trademark theory of liability and discussed the cases that have shaped

the doctrine:

> The Lanham Act identifies several forms of conduct that constitute actionable
> trademark infringement. See 15 U.S.C. §§ 1114(a) & 1125(a). Liability under the
> Lanham Act may be imposed not just on direct infringers, but also on those who
> induce or facilitate the infringing conduct of others. *See Inwood Labs., Inc. v. Ives
> Labs., Inc.*, 456 U.S. 844, 853–54 (1982)). In a case that involved claims that a

4

generic drug manufacturer was liable for contributory trademark infringement, the
United States Supreme Court explained:

> [I]f a manufacturer or distributor intentionally induces another to
> infringe a trademark, or if it continues to supply its product to one
> whom it knows or has reason to know is engaging in trademark
> infringement, the manufacturer or distributor is contributorially
> responsible for any harm done as a result of the deceit.

*Id.* at 854 (citing *William R. Warner & Co. v. Eli Lilly & Co* ., 265 U.S. 526 (1924);
*Coca–Cola Co. v. Snow Crest Bevs., Inc.*, 64 F. Supp. 980 (D. Mass.1946)). The
doctrine of contributory trademark infringement has been extended from the factual
context in which it first arose into settings substantially analogous to the one
presented here.

In a case involving a claim of contributory trademark infringement brought against
the operator of a flea market that included vendors selling infringing goods, the
Seventh Circuit held "that the *Inwood Labs* test for contributory liability applie[d]"
and that the flea-market operator could "be liable for trademark violations by [a
vendor] if it knew or had reason to know of them." *Hard Rock Cafe Licensing Corp.
v. Concession Servs.*, Inc., 955 F.2d 1143, 1149 (7th Cir. 1992). The court went on
to hold that the knowledge requirement could be met by a demonstration of willful
blindness, *id.* (citation omitted), which it defined as follows: "To be willfully blind,
a person must suspect wrongdoing and deliberately fail to investigate." *Id.* (citation
omitted). The court further explained that "the 'reason to know' part of the standard
for contributory liability requires [the defendant] to understand what a reasonably
prudent person would understand." *Id.* Ultimately, the court of appeals vacated the
trial court's decision in favor of the trademark owner, after a bench trial, because the
trial court used a standard for knowledge that was more akin to negligence than
willful blindness. *Id.*

In another flea-market case, the Ninth Circuit reversed the trial court's dismissal of
a claim for contributory trademark infringement against a swap meet, explaining that
"Hard Rock Cafe's application of the *Inwood* test is sound; a swap meet can not
disregard its vendors blatant trademark infringements with impunity." *Fonovisa,
Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 265 (9th Cir. 1996).

In *Tiffany (NJ) Inc. v. eBay Inc.*, a case in which the defendant was the operator of
an on-line marketplace, the Second Circuit restated the Inwood test to make it more
applicable to an accused contributory infringer that provides services rather than
goods:

> [W]hen applying *Inwood* to service providers, there are two ways in

5

> which a defendant may become contributorially liable for the
> infringing conduct of another: first, if the service provider
> "intentionally induces another to infringe a trademark," and second,
> if the service provider "continues to supply its [service] to one whom
> it knows or has reason to know is engaging in trademark
> infringement."

600 F.3d 93, 106 (2d Cir.2010) (quoting *Inwood*, 456 U.S. at 854). In the district
court order holding the defendant not to be liable for contributory infringement that
was affirmed in Tiffany, the trial judge explained: "Willful blindness requires 'more
than mere negligence or mistake' and does not lie unless the defendant knew of a
high probability of illegal conduct and purposefully contrived to avoid learning of it,
for example, by failing to inquire further out of fear of the result of the inquiry."
*Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 515 (S.D.N.Y.2008) (quoting
*Nike Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp. 2d 1352, 1369–70 (S.D.
Ga.2003)).

*Gata*, 2011 WL 2358671, at *6-7.

At the hearing on the instant motion to compel, and in her Order granting in part and denying

in part the Dequindre Defendants' motion, Magistrate Judge Michelson relied on the reasoning of

*Gata*, and specifically on the "reason to know" standard underlying the doctrine of contributory

infringement, to conclude that Coach's internal training materials were not sufficiently relevant to

the Dequindre Defendants' knowledge (or lack thereof) of the counterfeiting activities of their Flea

Market vendors to justify production of Coach's training materials:

> [T]he reason to know part of the standard for contributory liability requires a
> defendant to understand what a reasonably prudent person would understand. . . .
> whether a defendant had actual knowledge or what a reasonably prudent person
> would understand given the circumstances.  And I just don't think that information
> comes from Coach's training materials.  The issue here is what the defendants did or
> didn't do, what the defendants knew or didn't know, not necessarily what Coach did
> or didn't do or knew or should have known.

ECF No. 67, Transcript of September 24, 2012 Hearing, 10.

Having concluded that the Coach training materials were of scant relevance to the issue of

6

what a reasonably prudent person should have known under the circumstances of this case, the Magistrate Judge further concluded that there were less burdensome methods by which the Dequindre Defendants could obtain general information relating to the detection of counterfeit Coach goods other than through Coach's internal, confidential training materials:

> There does not appear to be any dispute that the goods at issue were counterfeit. Plaintiffs contend that, despite being on notice, Defendants took no action to prevent the sale of counterfeit goods by vendors. Defendants respond that they need Coach's training videos to demonstrate the difficulty in detecting counterfeit goods. The Court does not agree. Coach has identified numerous other sources of this information that would not require production of its confidential training materials. . . .[I]n sum, [I] don't think the premise of the defendants' position is accurate that counterfeit goods can only be detected with special training materials. I do think there are other materials available to them, including the ability to question a 30(b)(6) witness about this.

ECF No. 72, October 11, 2012 Order, 2. Accordingly, Magistrate Judge Michelson denied the Dequindre Defendants' motion to compel Coach to produce its internal training materials.

The Magistrate Judge also denied the motion to compel Coach to respond to inquiries regarding its internal policies and strategies for pricing its goods, as opposed to the actual price of goods sold at various points of sale:

> Coach shall produce one or more individuals for depositions pursuant to Fed. R. Civ. P. 30(b)(6). However, the Plaintiffs' internal policies and strategies for pricing their goods may not be an area of inquiry. The Defendants may question Coach's witnesses about the differences in the prices of Coach's goods at various point of sale and the reasons for any such price difference. The Defendants may also question any such witnesses with respect to the differences in quality, if any, of Coach products sold at various points of sale.

ECF No. 72, October 11, 2012 Order, 3.

### A.     Coach's Training Materials

The Dequindre Defendants object to Magistrate Judge Michelson's denial of their motion to

7

compel Coach to produce its counterfeit-detection training materials. Defendants claim that these materials would tend to make their claim that they could not possibly have detected that the goods in question were counterfeit more probable than not because the materials, they assert, demonstrate that one must be trained in counterfeit detection in order to identify counterfeit products. The Court concludes that the Magistrate Judge's determination that this information is of questionable relevance and, in any event can be obtained from other less burdensome sources, is not clearly erroneous or contrary to law.

First, as recognized by Magistrate Judge Michelson, the relevant standard of knowledge on a claim of contributory infringement is what a reasonably prudent person under similar circumstances would understand. The question is not what a specially trained counterfeit investigator would understand but what a reasonably prudent person would understand given the circumstances of this case, i.e. the sale of goods at a flea market where designer merchandise is being sold at rock-bottom prices. "[A] swap meet can not disregard its vendors blatant trademark infringements with impunity." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 265 (9th Cir. 1996). The fact that Coach may train its investigators to detect counterfeit goods has no bearing on what these Defendants knew or should have known about counterfeiting activity in their Flea Market where prior instances of counterfeiting had occurred. Coach's investigators are trained to detect counterfeit goods in multiple different settings, not just to spot knock-offs at county flea markets. Defendants offer no legal or logical support for their suggestion that the reasonably prudent person under the circumstances of this case is one specially trained in the art of counterfeit detection. Indeed, such a standard would all but obliterate Coach's ability to protect its mark under these circumstances.

8

Second, even assuming that the training materials had some arguable relevance to the Flea Market owners' defenses to liability on Plaintiffs' claims, all discovery otherwise permissible under the Federal Rules is subject to the limitation set forth in Fed. R. Civ. P. 26(b)(2)(C), which permits the Court to limit discovery otherwise allowed if the information can be obtained from some alternate source or if the burden of producing the evidence outweighs its likely benefit considering the needs of the case. *See* Fed. R. Civ. P. 26(b); 26(b)(2)(C)(i), (ii).  Contrary to Defendants' suggestion, the Magistrate Judge was not obliged to conclude that the Coach training materials constituted trade secrets in order to conclude that their production was burdensome and rendered unnecessary by the availability of other less burdensome means of discovering information relating to the detection of counterfeit goods.

The counterfeit goods in this case were being sold at a flea market at dramatically low prices. It would not take a rocket scientist trained in detecting counterfeit goods to suspect that the goods being sold, under the circumstances of this case, might be counterfeit and to make inquiry accordingly.  The Magistrate Judge expressly ruled that the Dequindre Defendants may question any witness about the investigations in this case, may inquire into the conclusions that were reached regarding the counterfeit nature of the goods sold at the County Line Flea Market and about the bases for those conclusions, including questioning based on the information regarding counterfeit detection that is publicly available on Coach's website.

If the Dequindre Defendants seek to establish what a reasonable person, under the circumstances of this case, would understand about vendor sales of counterfeit goods at a county flea market, the Magistrate Judge is correct in her conclusion that such information is not to be found in Coach's training materials and is available from multiple other, more appropriate and less

9

burdensome, sources.   Accordingly, the Magistrate Judge's conclusion that Coach's training materials were of questionable relevance and that, in any event, the relevant substance of the discovery sought was available from other sources, was not clearly erroneous or contrary to law.

**B.     Coach's Pricing Strategies**

The Dequindre Defendants also object to the Magistrate Judge's denial of their motion to compel discovery regarding Coach's internal policies and pricing strategies.   The Dequindre Defendants argue that Coach's pricing strategies are "directly related to any claimed damages including lost profits." (ECF No. 73, Obj. 7.)  The Dequindre Defendants offer no explanation beyond this unsupported statement regarding the relevance of Coach's internal pricing strategies apart from a suggestion that this information is relevant because Coach itself sometimes sells its products at reduced prices.  The Court fails to see the logic of either suggestion.

Not unimportantly, Coach asserts that it is claiming statutory damages, not lost profits, in this case.  (ECF 77, Coach's Resp. to Obj. 8.)  Even if Coach's profits were somehow relevant, the Dequindre Defendants have failed to articulate how Coach's internal strategies for arriving at those prices has any relevance to the claims in this action.  The Dequindre Defendants appear to suggest that because Coach sometimes sells its products at different prices at different points of sale, the Defendants are free to turn a blind eye to their vendors' sales of counterfeit Coach goods.  Not surprisingly, they offer no legal support for such a defense to liability for trademark infringement.

The strategic decisionmaking that may have informed Coach's decision to sometimes sell its goods in outlet stores or at reduced prices in other venues has no bearing at all on whether these Defendants are guilty of infringing the Coach mark by permitting the sale of knock-offs at their flea market.  While the actual prices of Coach goods sold at these various points of sale may be of

10

relevance, the Magistrate Judge has ruled that Coach must produce a Fed. R. Civ. P. 30(b)(6) witness to testify about the differences in the prices of Coach's goods at various points of sale and the reasons for any such price differences and also to testify with respect to the differences in quality, if any, of Coach products sold at various points of sale.

Accordingly, the Court concludes that the Magistrate Judge's ruling disallowing further inquiry into Coach's internal pricing strategies and policies is not clearly erroneous or contrary to law.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES the Dequindre Defendants' Objections and AFFIRMS Magistrate Judge Michelson's October 11, 2012 Order.

IT IS SO ORDERED.

Paul D. Borman
United States District Judge

Dated: 12-12-12

11